## In re FISCHER.
### Patent Appeal No. 3057.

Court of Customs and Patent Appeals.
Feb. 6, 1933.

Albert F. Robinson, of Washington, D. C., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

Sixteen claims (being all the claims) of appellant's application, styled "Improvement in Composition of Matter," were rejected by the examiner whose decision was affirmed by the Board of Appeals of the United States Patent Office. From the decision of the latter, applicant appeals to this court.

The following statement of the examiner describes the claimed invention: "The alleged invention relates to a construction material or expansion joint strip made up of a bituminous binder and elongated fibers having lignified walls such as corn stalk filaments, bamboo, etc. The lignified walls tend to prevent the bituminous material from penetrating the fibrous material and thereby serve to impart resilient characteristics to the final product."

Claim 6 is quoted as representative: "6. Compressible and elastic construction material comprising a predominant proportion of ductile binding material having a subordinate proportion of resilient reenforcing material mixed therein, said reenforcing material comprising fibers containing substances which have the inherent quality of resisting penetration of the binding material in the fibers."

Claims 8 and 9 recite the proportions of bituminous and re-enforcing materials, sug-gested in the specification; claims 10 and 11 specify re-enforcing fibers that contain a pectose substance which renders them impervious or resistant to penetration of the binder material; claims 12 and 13 call for fibers that have lignified inner and outer walls, and claims 14–21 are similar to claim 6, supra, but limit the construction material claimed to expansion joint strips.

The involved application was filed in the Patent Office March 4, 1926. At that time appellant had pending an application, serial No. 77,877, filed December 26, 1925, styled "Premolded Expansion Joint." The latter ripened into patent 1,597,273, issued August 24, 1926, and it constitutes the principal, if not the sole, reference upon which the here involved application was rejected.

The only other reference mentioned is a patent to Amies, 525,832, issued September 11, 1894, relating to "Paving-Block." The examiner states only that: "Amies discloses a paving block produced by compressing fibrous material such as straw, hay and weeds into bales or blocks and submerging the blocks in coal tar or bitumen."

The opinion of the board makes no mention of Amies, except that it is included as one of the stated references.

We doubt whether it is in point, but it is unnecessary further to consider it in view of our conclusion based upon appellant's own patent.

Appellant's patent included both product and method claims. Claim 8 thereof is here quoted: "8. A preformed expansion joint for concrete construction, comprising a bituminous material which has been previously treated with a substance to retard its penetrating qualities, and having straw and finely divided fibrous material incorporated therewith."

The method claims are for the process of making the product, and they contain the same limitations as to materials that are included in the product claims.

The application now before us contains only product claims.

In all the Fischer patent claims straw is specifically named as an element of the composition. Claims 3, 5, and 8 call for "straw *and* finely divided fibrous" material. (Italics ours.) In claims 4 and 5 mention is made of "comminuted mineral material." In claims 7 and 8 there is specified as the binder, "a bituminous material which has been previously treated with a substance to retard its penetrating qualities."

Taking claim 6 of the involved application as typical and comparing same with the patent claims, it appears that the distinctions from the latter are:

(a) Straw is not specified as the filler or as a component of the filler which constitutes the re-enforcing material.

(b) Only fibers are named as such filler, and these fibers are limited to such as contain "substances which have the inherent quality of resisting penetration of the binding material in the fibres." The "fibrous material" in the patent claims was not so limited.

(c) There is no mention of a treatment of the binder to retard its penetrating qualities.

These seem to be the only material differences. Claims 10 and 11 speak of fibers having "an outer protective coating of a pectose substance," and claims 12, 13 refer to fibers having "lignified inner and outer walls." Such fibers presumably are natural resistants to penetration, and hence appear to be covered broadly in the other claims.

A distinction between comparable claims of the application itself is found in the fact that part of them seem to limit the composition of *all* the re-enforcing material to fibers such as are therein described, while in the other claims only *"some"* of the re-enforcing material is so limited. (Italics ours.)

Appellant, in the specification of the application before us, names as materials suitable for use in making the resilient re-enforcing material, or filler, such things as bagasse, cornstalk filaments, bamboo, esparto, and others, stating that the fibrous matter preferable for use is such as has "lignified walls of tubular formation." Obviously, we think, this would include straw.

The Board of Appeals, citing In re Isherwood, 46 App. D. C. 507, and In re Swan, 46 F.(2d) 572, 18 C. C. P. A. 935, says: "All the appealed claims are generic in character and could have been made in the above mentioned [Fischer] patent. The effect of granting a second patent on the appealed claims would be to extend appellant's monopoly since no one could practice the invention of the patent upon its expiration without infringing the appealed claims. We do not find a patentable distinction between the remaining species of the present application and the species covered by the claims of the patent."

It is appellant's insistence that, the claims of his application being generic, while the claims of the patent were limited to a species (straw), the case is controlled by the doctrine of Traitel Marble Co. v. Hungerford Brass & Copper Co. (C. C. A.) 22 F.(2d) 259, and like cases.

He insists that he is the "inventor of the genus as well as the specific embodiments" disclosed and claimed in his patent, and that what he here claims was not substantially covered in the patent. With this latter we cannot agree.

The difficulty confronting appellant, as we view the issue, is that the claims of his application are not so limited as to exclude from them such substances composing the "reenforcing material" as are already covered by his patent.

Appellant is already protected as to a product in which straw alone and "straw *and* finely divided fibrous material" (italics ours) comprise the filler, or "reenforcing material."

In re Fischer, 57 F.(2d) 369, 19 C. C. P. A. 1077, seems to be directly in point.

The decision of the Board of Appeals is affirmed.

Affirmed.